IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joanne Helen Glockner, ) | C/A No. 0:11-955-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Joanne Helen Glockner ("Glockner"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

### ADMINISTRATIVE PROCEEDINGS

In August 2006, Glockner applied for DIB, alleging disability beginning January 2, 2004. (Tr. 119.) Glockner's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 13, 2009, at which Glockner, who was represented by Beatrice Whitten, Esquire, appeared and testified. The ALJ issued a decision on March 19, 2009 finding that Glockner was not disabled. (Tr. 15-23.)

Glockner was fifty-three years old at the time of her alleged disability onset date. (Tr. 140.) She has a high-school education and vocational training in cosmetology and has past relevant work

experience as a hair dresser at a salon. (Tr. 121, 126.) In her application, Glockner alleged disability since January 2, 2004 due to brain, leg, and knee injuries, memory loss, post-traumatic stress disorder, and depression following a motor vehicle accident. (Tr. 119.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act of December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 2, 2004 through her date last insured of December 31, 2007. (20 CFR 404.1571 *et seq.*).

    \* \* \*

3. Through the date last insured, the claimant had the following severe impairments: history of injuries to her right leg and left knee with residual leg and knee pain; depression/anxiety/post-traumatic stress disorder; and an attention deficit disorder (20 CFR 404.1521 *et seq.*).

    \* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

    \* \* \*

5. . . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of medium unskilled work[] as defined in 20 CFR 404.1567(c).

    \* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

    \* \* \*

7. The claimant was born on [REDACTED], 1950 and was 57 years old, which is defined as an individual closely approaching advanced age, on the date last insured. The claimant subsequently changed age category to advanced age as of her fifty-fifth birthday on [REDACTED], 2005 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2004, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-23.) On February 23, 2011, the Appeals Council denied Glockner's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

PJG

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Glockner raises the following issues for judicial review:

I. The ALJ failed to evaluate the combined effect of Mrs. Glockner's multiple impairments;

II. The ALJ performed a flawed credibility analysis;

III. The ALJ failed to perform a full RFC analysis.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.     Glockner's Credibility**

The court will address the second issue first. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptoms] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

On January 2, 2004, Glockner was struck by a vehicle. (Tr. 27, 179.) After admission to the hospital, Glockner underwent surgery to repair a right tibia-fibula fracture and a left patella fracture. Glockner was also diagnosed with a closed fracture of the facial bones, a concussion with loss of consciousness, lacerations of her scalp and below her lip, and two missing front teeth. (Tr. 172-74, 187-88.) Following surgery and after stabilizing Glockner, she was transferred to the rehabilitation

unit within the hospital and was ultimately discharged twenty-five days later. (Tr. 187.) Since that time, Glockner's medical records reveal that she has continued to complain of leg pain. In February 2004, Glockner underwent a revision to her left patella repair, and in February 2005, she reported swelling of her knee after falling the night before. Further, in April 2006 after complaints of pain in her lower right leg and noted tenderness, the hardware from her right leg was removed. Additionally, since the accident Glockner has sought treatment for depression and related mental impairments, including hospital admissions in May and August of 2006 for depression and suicidal ideation.

During the hearing, Glockner testified that since the accident she has been unable to work due to pain in her legs and that she is taking high dosages of pain medication each day. She stated that she has problems with her memory, finding words to express herself, and staying focused, and she reported feelings of heaviness. Glockner stated that she recently began taking a diuretic for the swelling in her legs and elevates her legs a couple of times per day for at least a half an hour to an hour. Glockner testified that her doctors informed her that her condition would not improve; rather, it would worsen with time due to arthritis. She also stated that if she did not take her pain medication, she would be nauseous from pain during the day and unable to sleep at night. Glockner reported that she can perform twenty minutes of housework before needing a break of one and a half to two hours. Approximately three to four times per month Glockner helps out at her brother's gift basket shop where she sits and helps fill gift bags. Finally, Glockner stated that her husband performs the grocery shopping and ninety to ninety-five percent of the cooking, but she does attend church and visits with her grandchild. (See Tr. 26-41.)

In this case, the ALJ found that Glockner's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements

*PJG*

concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20.) In reaching this conclusion, the ALJ found that with regard to Glockner's leg pain, "the record establishes that the claimant experienced improvement following her surgery noting that her tibia/fibula fracture was described as completely healed in June 2006 and she reported that she was doing well overall (despite complaints of bilateral knee pain) and she was advised to advance activities as tolerated." (Tr. 20.) A note in October 2006 indicated that Glockner ambulated without difficulty of complaints and she was consistently described as "not in any apparent distress throughout the medical evidence of record." (Id.) In finding that her cognitive claims were not fully supported, the ALJ observed that in July 2004 she was described as "alert, lucid, and oriented with an excellent knowledge of recent events" and that although it was noted in October 2006 that Glockner had "decreased capacity for attention/concentration, she was appropriately attired with good personal hygiene and was friendly and cooperative in her interactions with the examiner." (Id.) With regard to her activities of daily living, the ALJ stated that Glockner "continued to perform light household chores (although at a slower pace)," attended church, reported in February 2007 that she was performing some volunteer work, complained of jet lag in May 2008 suggesting she remained capable of travel, and remained capable of work beyond her alleged onset date. (Id.) The ALJ noted that although the work Glockner performed for her brother was not physically demanding, it indicated that she was capable of cooperative interaction with her brother and other employees, performing simple, routine tasks, and maintaining some semblance of a work schedule. Finally, the ALJ also observed that a medical record suggested she was noncompliant with her mental health treatment and experienced improvement in her mental health, ultimately reporting that she was doing much better. (Tr. 21.)

Glockner argues that the ALJ "failed to reconcile the conflicts between the evidence he selectively highlighted with the bulk of the medical record." (Pl.'s Br. at 11, ECF No. 16 at 11.) Glockner asserts that the record demonstrates that she repeatedly complained of leg and knee pain, requiring pain medication. Therefore, she argues, when read in context, medical notes indicating that she was feeling much better do not render her subjective complaints unsupported and do not demonstrate that she can perform medium work. Further, she asserts that the ALJ failed to address some of the factors in § 404.1529(c)(3) in evaluating Glockner's credibility. Specifically, she contends that the ALJ failed to consider the side effects Glockner suffered from her medications and that she engaged in physical therapy in conjunction with her pain medications. Glockner also challenges the ALJ's finding that some travel and working for her brother three to four days per month filling bags of food for gift baskets supported discrediting her credibility. Finally, Glockner argues that the ALJ erred in discrediting her credibility based on her alleged noncompliance in taking prescribed medications.

In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence based on the inconsistencies in the record as observed by the ALJ.[2] Upon review of the ALJ's decision, the record, and the parties' briefs, the court is constrained to recommend remanding this issue for further consideration by the ALJ. Although the ALJ listed several reasons for discounting Glockner's credibility, it is unclear how these reasons render Glockner's testimony that

---

[2] The Commissioner also offers other reasons that the ALJ's decision is supported; however, to the extent that these reasons were not offered and possibly not considered by the ALJ, such post hoc rationalization is generally prohibited. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

she is physically unable to work incredible, and support the ALJ's conclusion that she, in fact, may perform medium work.[2]  As acknowledged by the ALJ, even where the records demonstrate that she was "doing well," she continued to complain of leg pain and was prescribed pain medication. Accordingly, while some evidence may exist in the record to discount Glockner's credibility, the court cannot say that the ALJ's decision is supported by *substantial* evidence where the evidence relied upon by the ALJ does not appear to be inconsistent with Glockner's testimony.

**B.     Other Issues**

Reconsideration of Glockner's credibility may affect the ALJ's determination as to the subsequent steps of the sequential evaluation, including the RFC assessment.  Moreover, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Glockner's remaining issues, as they may be rendered moot on remand.  See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

---

[2] "Medium work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying 50 pounds occasionally and twenty-five pounds frequently as well as an ability to stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday."  (Tr. 19 n.1.)

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 6, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).nsdal/go;sefhoisrhig