**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| Joanne Helen Glockner, | ) | C/A No. 0:11-955-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C. and filed on August 6, 2012. Dkt. No. 21. For the reasons set forth below, the court declines to adopt the analysis portion of the Report[1] and affirms the Commissioner's decision.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject,

---

[1] The court adopts the portions of the Report labeled "Administrative Proceedings," "Social Security Disability Generally," "Standard of Review," and "Issues." The court also adopts the "Discussion" section through the last full paragraph on page 7.

1

or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

**BACKGROUND**

In August 2006, Plaintiff applied for DIB, alleging disability beginning January 2, 2004 due to brain, leg, and knee injuries, memory loss, post-traumatic stress disorder, and depression following an accident in which a motor vehicle struck her while she was a pedestrian.[2] Plaintiff's application was denied initially and on reconsideration by the Social Security Administration. Plaintiff requested a hearing, which was held by an administrative law judge ("ALJ") on January 13, 2009. The ALJ, in a decision issued March 19, 2009, found that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on February 23, 2011, making the ALJ's decision the final decision of the Commissioner.

On April 20, 2011, Plaintiff filed this action seeking review of the Commissioner's decision arguing that it is not supported by substantial evidence. Dkt. No. 1. Plaintiff argues that the ALJ (1) failed to evaluate the combined effect of Plaintiff's multiple impairments; (2) performed a flawed credibility analysis; and (3) failed to perform a full residual functional capacity ("RFC") analysis. Dkt. No. 16.

**DISCUSSION**

The Report recommends that the court reverse the Commissioner's decision and remand this matter because it is not supported by substantial evidence. Report at 11. Specifically, the Report concludes that the ALJ's credibility determination of Plaintiff is not supported by substantial evidence.[3] *Id.* at 10. In objections filed on August 22, 2012, the Commissioner argues that the

---

[2] The accident occurred on January 2, 2004.

[3] The Report does not address the issues of whether the ALJ failed to evaluate the combined effect of Plaintiff's multiple impairments and whether the ALJ failed to perform a full RFC analysis. The Report finds that these issues may become moot on remand based on the Report's conclusion

3

Magistrate Judge erred in recommending that the court reverse the Commissioner's decision and remand the matter based on the ALJ's credibility determination. Dkt. No. 24. Plaintiff did not file a response to the Commissioner's objections.

**Credibility Determination.** During her administrative hearing, Plaintiff testified that she was unable to work since the accident due to pain in her legs. Tr. 28. She stated that she takes high dosages of pain medication each day (Tr. 33-34), elevates her legs a couple of times per day for half an hour to an hour to reduce swelling (Tr. 30), and is expected to get arthritis in her knees. *Id.* Plaintiff also testified that she is able to perform limited housework (20 minutes of vacuuming) but that she needs to take breaks (1 ½ - 2 hours). Tr. 34. She explained that she works occasionally (3-4 times per month) for her brother's gift basket business. Tr. 38. She also testified that she attends church but that her husband does most of the grocery shopping and cooking. Tr. 39-40. She stated that she has short-term memory and focus problems. Tr. 28-29, 31-32.

The ALJ found that although she had medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. Tr. 20. The ALJ found that Plaintiff had the RFC to perform medium unskilled work. Tr. 19. In discounting Plaintiff's reports of pain, the ALJ stated:

> As to her complaints of leg pain, the record establishes that the claimant experienced improvement following her surgery noting that her tibia/fibula fracture was described as completely healed in June 2006 and she reported that she was doing well overall (despite complaints of bilateral knee pain) and she was advised to advance activities as tolerated. (Exhibit 7F) Also, Dr. Waid indicated in October 2006, that the claimant ambulated without difficulty or complaints. (Exhibit 8F) Furthermore, the claimant was consistently described as not in any apparent distress throughout the

---

that the credibility determination was flawed.

4

> medical evidence of record. (Exhibits 3F, 6F, 13F and 19F) . . . Also, the claimant maintains the ability to perform activities of daily living given her testimony that she continued to perform light household chores (although at a slower pace) and attend church. Furthermore, she reported in February 2007, that she was performing some volunteer work. (Exhibit 14F) Additionally, a May 2008 progress noted from Coastal Psychiatry indicates that the claimant complained of "jet lag" which suggests that she remained capable of travel. (Exhibit 20F, page 8) Moreover, the claimant has continued to work beyond her alleged onset date and while the work, according to her description, is not physically tasking, it does indicate that she remains capable of cooperative interaction with her brother as well as other employees; of the performance of simple, routine tasks; and of maintaining some semblance of a work schedule.

Tr. 20-21.

Plaintiff argues that the ALJ's credibility determination was flawed because the ALJ "advanced no legally sound rationale for" discounting Plaintiff's credibility. Dkt. No. 16 at 9. Plaintiff contends that the ALJ's reasons for discounting her alleged symptoms are unclear. Specifically, Plaintiff argues that her leg and knee pain is supported by the medical records and an improvement noted in a doctor's note in June 2006 does not render her leg and knee pain obsolete. Further, Plaintiff contends that the ALJ ignored the side effects of her medications and that she underwent physical therapy. Finally, Plaintiff contends that the ALJ mentioned "a medical notation of non-compliance with medication," but that the "non-compliance" is explained by Plaintiff's experience with severe side effects. *Id.* at 12.

The Commissioner argues that "[a]lthough the ALJ admittedly did not specifically cite to all of the examples of the evidence of record to support his adverse credibility finding which were cited in Defendant's Brief (Defendant's Brief at 9), he did specify that he had carefully considered the 'entire record' (Tr. 19), which indicates he had reviewed all of the evidence of record, including the uncited evidence which supported the adverse credibility determination." Dkt. No. 23 at 1-2. The Commissioner then cites evidence in the ALJ's opinion which supports the ALJ's finding that

Plaintiff's testimony was not credible: "Plaintiff continued to work well after her alleged onset of disability date (Tr. 18, 20-21); her ability to travel on vacation (Tr. 20); her ability to engage in volunteer work, which indicated she had the ability to interact appropriately with others (Tr. 18, 20); and the fact that she was routinely found to be in no acute distress during examinations (Tr. 20)." Dkt. No. 24 at 2.

The court finds that the ALJ's credibility determination is supported by substantial evidence. The ALJ recognized that Plaintiff was involved in a motor vehicle-pedestrian accident in 2004 that injured her legs and required surgery, and in April 2006, Plaintiff underwent a procedure to remove painful hardware from her right tibia. The ALJ recognized that Plaintiff continually complained of bilateral knee pain throughout the relevant period and that Plaintiff used pain medication as a result. However, the ALJ found that Plaintiff's activities of daily living were inconsistent with her testimony as to the limiting effects of her pain. The ALJ cited Plaintiff's occasional work assisting her brother with his gift basket business, her report to a health care provider in February 2007 that she was volunteering, and her report of "jet leg" in May 2008, indicating that Plaintiff was capable of travel.[4] The ALJ also cited to Plaintiff's testimony that she was capable of performing light household chores and that she attended church. The court finds that substantial evidence supports the ALJ's credibility determination that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms did not support the conclusion that she was prevented from performing medium work during the relevant period.[5] The ALJ considered Plaintiff's mental

---

[4] The record also includes a physician's notation that Plaintiff will be seen "when she returns from her trip to Alaska" in April 2004, just 4 months after her accident. Tr. 253.

[5] Plaintiff has not directed the court to Plaintiff's side effects from her medications. The court notes that during the hearing, Plaintiff testified that she takes Ultram Extended Release (300

6

impairments and limited her to unskilled work, and there is substantial evidence that she is capable of performing unskilled work.[6] The court, therefore, concludes that the ALJ did not err with respect to the credibility determination because it is supported by substantial evidence.

**Combination of Impairments.** Plaintiff also argues that the ALJ failed to consider the combination of her impairments in determining whether she was disabled. Plaintiff does not identify an impairment that the ALJ ignored, but rather argues that the ALJ failed to consider the combined effects of all of Plaintiff's impairments, including that fact that Plaintiff's mental impairments are severely aggravated by her physical impairments. Dkt. No. 9 (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). In *Walker v. Bowen*, the Fourth Circuit explained:

---

mg) for pain. When asked whether she has any side effects from that pain medication, Plaintiff testified, "No, thank goodness, because Ultram Extended Release works better for me and a little bit of food in my stomach, you know, before I go to bed at night." Tr. 33-34. Also, Plaintiff contends that the ALJ erred in relying on the Plaintiff's "non-compliance" with certain mental health treatment, specifically "an unwillingness to take her medications," because Plaintiff experienced severe side effects from the medications. The court finds that any error with respect to this finding is harmless because substantial evidence, as cited by the ALJ, supports that Plaintiff's mental health was improving and did not render her disabled.

[6] As stated in the ALJ's decision:
> The undersigned also provided compensation for the claimant's mental impairment(s) by limiting her to unskilled work. Such compensation is adequate noting that, as previously mentioned, the claimant was able to correctly identify the current president and properly estimate the outside temperature when evaluated in July 2004. She was also able to recall two of three objects after five minutes. (Exhibit 4F, pages 3-4) Moreover, the claimant had demonstrated the ability to perform all of the mental activities generally required by competitive, remunerative, unskilled work. For example, the claimant had the ability to understand, remember, and carry out simple instructions and to make simple work-related decisions, as demonstrated by her ability to work at her brother's business, to travel, and maintain her personal hygiene, as well as her competent demeanor at the hearing. In addition, the claimant's treatment records fail to demonstrate that her ability to respond appropriately to supervision, co-workers and usual work situations or to deal with changes in a routine work setting have been compromised by her impairments. As a result, the claimant's ability to perform unskilled mental activities remains intact.

Tr. 21-22.

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[ ] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them . . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

889 F.2d at 50.

At step three of the sequential analysis, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526)." Tr. 18. The ALJ considered Plaintiff's "leg/knee problems" as well as her mental impairments. *Id.* Further, the ALJ considered the effects of Plaintiff's symptoms, including her alleged cognitive difficulties (focus and short-term memory problems), in determining Plaintiff's RFC. Tr. 20-22. The court finds that the ALJ sufficiently discussed Plaintiff's alleged impairments and limitations to demonstrate that he considered Plaintiff's impairments in combination. Further, the court observes that Plaintiff has neither cited an impairment ignored by the ALJ nor offered any explanation as to how more discussion or explanation may have changed the outcome in this case.[7] The court, therefore, concludes that the ALJ considered the combination of Plaintiff's impairments and that his conclusion that the combined effect of Plaintiff's impairments is not disabling is supported by substantial evidence.

**RFC Analysis.** Finally, Plaintiff argues that the ALJ failed to perform a proper RFC analysis. Plaintiff does not identify any specific error as to the ALJ's RFC analysis, but rather

---

[7] It is Plaintiff's burden to present evidence that her condition meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

8

expresses a disagreement with the finding that Plaintiff can perform medium work.[8] There is no evidence in the record of limitations placed on Plaintiff by her treating physicians. Neither has Plaintiff identified any evidence that contradicts the ALJ's RFC analysis. It appears that Plaintiff is arguing that Plaintiff's age precludes her from performing medium work. Dkt. No. 19 at 4. The ALJ explained in his decision why Plaintiff's knee and leg problems did not preclude her from performing medium work, including citation to two state agency opinions that Plaintiff was capable of medium work (Tr. 20); the lack of limitations placed on Plaintiff by her physicians[9] (Tr. 21); Plaintiff's ability to travel (Tr. 20); Plaintiff's lack of cyanosis, clubbing or edema in March 2004 (Tr. 21); Plaintiff's appearance of moving easily without edema to her legs in October 2004 (Tr. 21); and an observation in October 2006 that she was ambulating without difficulty (Tr. 21). The court finds that the ALJ properly analyzed Plaintiff's RFC, which is supported by substantial evidence.

The court, therefore, affirms the Commissioner's decision because it is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the court declines to adopt the analysis portion of the Report and affirms the Commissioner's decision.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE

---

[8] The court notes that Plaintiff does not offer any opinion evidence as to her work limitations or abilities. The record contains two opinions by state agency physicians, which both conclude that Plaintiff is capable of medium work.

[9] The ALJ did note that the record contains an April 26, 2006 progress note stating that Plaintiff should remain non-weight bearing for six weeks following removal of painful hardware, which was implanted after her accident. Tr. 21. The ALJ did not find, and the court is unaware of, any further limitations in the record.

UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 17, 2012